**Exhibit 1**



06164, 511 Yeongdong-daero, Gangnam-gu, Seoul, Korea.
43rd Floor www.kcab.or.kr Manager Sangyub Lee
T 02-551-2029F 02-551-2030E lsy@kcab.or.kr
Seoul | Los Angeles | Hanoi | Shanghai | Busan

| Document No. | No. 250013 | January 2, 2025 |
|---|---|---|
| To | Claimant's Counsel SHIN & KIM LLC | I25-00565            01/07 |
| | Attorneys Youngwon Yoon and Hyo-jung Shin | |
| Cc | | (K06554-2202) |
| Title | Original Copy of Arbitral Award | YWY (Closing of Complaint; April 7) |

1. With respect to Arbitration No. 23113-0005 between Claimant SHOWBOX Corp., and Respondent Maum Studio Inc., an original copy of the main text of the arbitration is sent in accordance with Article 32 (4) of the Arbitration Act and Article 40 (1) of the KCAB International Arbitration Rules.

2. We inform you that the prepaid arbitration costs have been settled as shown in Attachment 2, and the settlement balance will be remitted to the bank account below and the tax invoice will be mailed separately.

     A. Settlement balance: ₩646,563
     B. Receiving bank: Shinhan Bank
     C. Bank account number:         ?505
     D. Account holder: SHOWBOX Corp.

3. For further details, please contact the person in charge.

Attachment: 1. Original copy of the Arbitral Award    1 copy
           2. Statement of Settlement    1 copy. End.

# **KCAB International**



# Korea Commercial Arbitration Board
# International Arbitration Center

06164, 43rd Floor, 511 Yeongdong-daero, Gangnam-gu, Seoul, Korea Tel: 02-551-2000 (Main) www.kcab.ar.kr
Manager: Counsel Sangyub Lee Telephone: 02-551-2029 (Direct line)      Fax: 02-551-2030      Mail:
lsy@kcab.ar.kr

# Statement of Settlement

Case No.:      No. 23113-0005, January 2, 2025
Claimant:      SHOWBOX Corp.
Respondent:    Maum Studio Inc.



[Amount applied for:      KRW 6,660,703,141 ]
USD 5,411,686.01 ]

※ Applying the Seoul Foreign Exchange Brokerage Co., Ltd., publicly announced trading reference rate for February 1,
2023, US $ 1.00 = ₩ 1,230.8.

| Category | | Amount | | Breakdown | | | |
|---|---|---|---|---|---|---|---|
| | | | | Claimant | | Respondent | |
| 1. Charges; | | ₩ | 30,951,000 | ₩ | 30,951,000 | ₩ | 0 |
| | (1) Application fee | ₩ | 1,000,000 | ₩ | 1,000,000 | ₩ | 0 |
| | (2) Administrative fees | ₩ | 29,951,000 | ₩ | 29,951,000 | ₩ | 0 |
| Value Added Tax | | ₩ | 3,095,100 | ₩ | 3,095,100 | ₩ | 0 |
| 2. Expenses; | | ₩ | 667,337 | ₩ | 667,337 | ₩ | 0 |
| | (1) Arbitrator fees | ₩ | 667,337 | ₩ | 667,337 | ₩ | 0 |
| | (2) Other expenses | ₩ | | ₩ | 0 | ₩ | 0 |
| 3. Allowances; | | ₩ | 45,740,000 | ₩ | 45,740,000 | ₩ | 0 |
| Total Cost of Arbitration | | ₩ | 80,453,437 | ₩ | 80,453,437 | ₩ | 0 |
| Prepayment Amount | | ₩ | 81,100,000 | ₩ | 81,100,000 | ₩ | 0 |
| Cost Burden by Arbitral Award | | ₩ | 80,453,437 | ₩ | 0 | ₩ | 80,453,437 |
| Balance After Deduction (Amount Returned) | | ₩ | 646,563 | ₩ | 646,563 | ₩ | 0 |

# Chairman of KCAB International

# Arbitral Award
## Original Copy



**KCAB**
**Korea Commercial Arbitration Board**

# Korean Commercial Arbitration Board
# Arbitral Award

**Arbitration No. 23113-0005**

Claimant:    SHOWBOX Corp.
                Address: 7th, 8th, and 9th floors, 310 Dosan-daero, Gangnam-gu, Seoul, Korea
                (Nonhyeon-dong, 916 Building)
                Representative: Representative Director Kim Do-soo

                Counsel: SHIN & KIM LLC
                        Attorneys Yoon Youngwon, Shin Hyo-jung, Yoon Yeo-hyun, and Jeong So-Jeong
                        Address: 23rd Floor, D Tower (D2), 17 Jongno 3-gil, Jongno-gu, Seoul, Korea

Respondent:    Maum Studio Inc.
                Address: 322 University Avenue, Palo Alto, California 94301, U.S.A.
                Address for service: 243 Angela Drive, Los Altos, California 94022-3012, U.S.A.
                Representative: Bon Woong Koo (Koo Bon-woong), Chief Executive Officer

Seat: Seoul, Republic of Korea

# Award

1.  The Respondent shall pay the Claimant KRW 6,653,703,141, in addition to interest at the rate of 6% per annum with respect to KRW 6,583,703,141 from January 5, 2022, to the date of full payment, and interest at the rate of 6% per annum with respect to KRW 70,000,000 from April 18, 2023, to the date of full payment.

2.  The remainder of the Claimant's claims are dismissed.

3.  The Respondent shall pay the Claimant KRW 147,266,491 in arbitration costs, including attorneys' fees paid by the Claimant in connection with the Present Arbitration.

# Relief Sought by the Claimant

1.  The Respondent shall pay the Claimant KRW 6,653,703,141, of which KRW 70,000,000 shall be paid at the rate of 6% per annum from September 30, 2022, to the date of full payment and KRW 6,583,703,141 shall be paid at the rate of 6% per annum from October 4, 2022 until the date of full payment.

2.  The Respondent shall indemnify the Claimant for legal and other costs incurred in connection with the Present Arbitration, together with interest thereon.

3.  Such other determinations as the Arbitral Tribunal considers appropriate.

# Reasoning

1.  Procedural History of the Present Arbitration

1.1 The Claimant and Orion Holdings Corp. (hereinafter "Orion Holdings"), filed the Present Arbitration Application with the Secretariat of the Korean Commercial Arbitration Board (hereinafter "KCAB") on February 1, 2023. In the Present Arbitration Application, the Claimant and Orion Holdings asserted that the Claimant's claim and the Orion Holding's claim are claims arising from virtually the same transaction, and that the other party to the claim are also identical as they are both the Respondent, so they are applying for a single arbitration in accordance with Article 22 of the International Arbitration Rules of the KCAB (hereinafter "International

Arbitration Rules"). The Secretariat of the KCAB labeled this case No. 23113-0005.

1.2    The KCAB attempted to deliver, through the DHL International Delivery Service (hereinafter "DHL"), a copy of the Present Arbitration Application to the address of the Respondent as set forth in the Present Arbitration Application that is 322 University Avenue, Palo Alto, California 94301, U.S.A. (This is the same address listed in Article 13.3 (Notices) of the Subscription Agreement (Exhibit No. C-1) executed between the Claimant and the Respondent. Hereinafter the "Respondent's Address"), but delivery was not made due to the absence of the recipient. When DHL contacted the Respondent's Chief Executive Officer, Bon Woong Koo, by telephone after the delivery failed, Bon Woong Koo requested that the documents related to the Present Arbitration be sent to 243 Angela Drive, Los Altos, California 94022-3012, U.S.A. (hereinafter, the "Respondent's Requested Delivery Address") instead of the Respondent's Address, and as such, the copy of the Present Arbitration Application was delivered to the Respondent by DHL on April 17, 2023.

1.3    However, on March 29, 2023, Orion Holdings submitted to the KCAB a written withdrawal of its arbitration application (hereinafter the "Partial Application Withdrawal"), which completely withdrew the portion of the Present Arbitration Application that was submitted by Orion Holdings. A copy of the Partial Arbitration Application Withdrawal was delivered to the Respondent by DHL on April 17, 2023, at the Respondent's Requested Delivery Address.

1.4    The Claimant paid KRW 1,100,000 in accordance with the Request for Payment of Arbitration Application Fees dated March 30, 2023, and in accordance with the Request for Prepayment of Arbitration Costs dated April 7, 2023, the Claimant prepaid the Claimant's portion of KRW 40,000,000 out of the total arbitration costs of KRW 80,000,000 (excluding the above Arbitration Application Fees). However, despite the request for prepayment of the arbitration costs by the Secretariat of the KCAB, the Respondent failed to pay the Respondent's portion of the burden by the deadline, so the Claimant received a request from the Secretariat on June 9, 2023, to make an additional prepayment for the payment of the Respondent's burden of KRW 40,000,000 out of the arbitration costs in accordance with Article 51 (6) of the International Arbitration Rules, and so the Claimant completed said additional prepayment on June 23, 2023.

1.5    Pursuant to Article 11 and Article 12 (1) of the International Arbitration Rules, the

Secretariat of the KCAB decided to refer this case to a sole arbitrator, and notified the Claimant and the Respondent of the decision to refer the case to the sole arbitrator through an official letter titled "Notice of Referral to the Sole Arbitrator and Guidance on Nomination" dated June 26, 2023, and requested that both parties agree to nominate a sole arbiter within 30 days from the date of receipt of the notice. This letter was delivered to the Claimant's Counsel by electronic means on June 26, 2023 (referred to as the "email") and to the Respondent at the Respondent's Requested Delivery Address by DHL on July 20, 2023.

1.6     When a sole arbitrator was not appointed by agreement between the Claimant and the Respondent within the above 30-day period, the KCAB's Secretariat appointed Korean national Choi Kyung-joon, a representative attorney of the Kim Chang & Lee law firm located on the 25th floor of the Buyoung Taepyeong Building, 55 Sejong-daero, Jung-gu, Seoul, as the sole arbitrator pursuant to Article 12 (1) of the International Arbitration Rules, and notified the Claimant and the Respondent of this appointment through an official letter titled "Notice of Composition of the Arbitral Tribunal" dated September 7, 2023, and requested that, after the formation of the Arbitral Tribunal and pursuant to Article 4 (5) of the International Arbitration Rules, all communications be made directly between the parties and between each party and the Arbitral Tribunal, and in the case of written communications, a copy thereof be submitted to the Arbitration Commission simultaneously, unless instructed otherwise by the Arbitral Tribunal. This letter was delivered by email on September 7, 2023, to the Claimant's Counsel and by DHL to the Respondent on September 11, 2023, at the Respondent's Requested Delivery Address.

1.7     On September 27, 2023, the Claimant submitted an application to the Arbitral Tribunal for the addition of Orion Holdings as a co-Claimant for the present arbitration in accordance with Article 21 (1) of the International Arbitration Rules, but on December 8, 2023, the above application for the addition of a party was voluntarily withdrawn and the Arbitral Tribunal accepted this.

1.8     The Arbitral Tribunal agreed to hold a preliminary procedural meeting via video conference to schedule the arbitration proceedings in this case and discuss procedural matters, and sent a letter to each party on April 29, 2024, requesting that they notify the Arbitral Tribunal by May 10, 2024 of the dates that they could attend among the multiple meeting dates proposed by the Arbitral Tribunal (May 22, 2024 at 4 P.M. KST,

May 23 at 4 P.M. KST, or May 24 at 4 P.M. KST), and that the parties make efforts to reach an agreement in advance regarding the arbitration schedule and the draft decision on procedural matters dated April 29, 2024, that was provided by the Arbitral Tribunal, but if no agreement is reached, for each party to submit their opinion by April 17, 2024. This letter was sent by email to the Claimant's Counsel and delivered on the same day, and was sent to the Respondent by email and through DHL to the Respondent's Address and Requested Delivery Address, and was delivered by DHL to the Respondent at the Respondent's Requested Delivery Address on May 6, 2024 (DHL notified the Arbitral Tribunal that the letter sent to the Respondent's Address failed to be delivered).

1.9   The Claimant submitted its opinion regarding the preliminary procedural meeting to the Arbitral Tribunal on April 30, 2024, while the Respondent did not make any reply to the Arbitral Tribunal until May 10, 2024, so the Arbitral Tribunal finalized the date and time for the preliminary procedural meeting as May 24, 2024, at 4:00 P.M. (KST) and sent a notice of schedule to the parties on May 14, 2024. This notice was sent by email to the Claimant's Counsel and delivered on the same day, and was sent by email and DHL to the Respondent and delivered by DHL on June 5, 2024, to the Respondent at the Respondent's Requested Delivery Address (DHL attempted delivery at the Respondent's Requested Delivery Address three times between May 15, 2024, to May 29, 2024, but failed to deliver due to the absence of the recipient).

1.10   The Claimant's Counsel informed the Arbitral Tribunal on May 17, 2024, that it had attempted to consult with the Respondent on the arbitration schedule and procedural matters but did not receive a response, and submitted its opinion on the draft decision on the arbitration schedule and procedural matters dated April 29, 2024, that was provided by the Arbitral Tribunal. The Respondent did not submit any opinion on the arbitration schedule and procedural matters by the deadline set by the Arbitral Tribunal, which was May 17, 2024.

1.11   As notified by the Arbitral Tribunal to the parties, the preliminary procedural meeting was held on May 24, 2024 at 4:00 P.M. (KST) via Zoom. Only the Claimant's Counsel was present at the meeting and no representative of the Respondent was present. The Arbitral Tribunal confirmed the arbitration schedule for the case and related procedural matters after hearing the opinion of the Claimant's Counsel at the above preliminary procedural meeting.

1.12   As set out in the preliminary procedural meeting above, the Arbitral Tribunal sent each of the parties a "Procedural Order on the Arbitration Schedule and Procedural Matters" (hereinafter "Procedural Order 1") attached hereto as Annex 1 on May 29, 2024. This decision regarding the arbitration proceedings was sent to the Claimant's Counsel by email and delivered on the same day, and to the Respondent by email and DHL and delivered by DHL to the Respondent at the Respondent's Requested Delivery Address on May 30, 2024.

1.13   The Respondent had to submit its response to the Claimant's Present Arbitration Application and related documentary evidence by June 14, 2024, in accordance with the Procedural Order 1, but did not submit any response or documentary evidence to the Arbitral Tribunal by that date.

1.14   On July 5, 2024, which was the deadline set by the Procedural Order 1, the Claimant's Counsel submitted to the Arbitral Tribunal a preparatory brief and related documentary evidence supplementing the contents of the Present Arbitration Application. The Claimant's Counsel sent the above brief and related documentary evidence to the Respondent by email on July 5, 2024, and sent the same document to the Respondent's Requested Delivery Address by DHL on July 8, 2024, but DHL failed to deliver due to the absence of the recipient despite four delivery attempts between July 10, 2024, to July 18, 2024. The Claimant's Counsel re-sent the above brief and related documentary evidence to the Respondent by DHL on August 14, 2024, and this document was delivered to the Respondent by DHL on August 15, 2024, at the Respondent's Requested Delivery Address.

1.15   In accordance with the Procedural Order 1, Respondent was able to submit its briefs and related documentary evidence and, if necessary, witness statements to comment on and rebut the above briefs and related documents submitted by Claimant by August 2, 2024, but it did not submit any briefs, documentary evidence or witness statements to the Arbitral Tribunal by said deadline.

1.16   Neither Claimant nor Respondent submitted any further documentation to the Arbitral Tribunal by August 9, 2024, the deadline for submitting further documentation in accordance with the Procedural Order 1.

1.17   Ultimately, the Respondent did not submit any response, brief, documentary evidence, or witness statement to the Arbitral Tribunal during the present arbitration proceedings.

1.18   In accordance with Procedural Order 1, the hearing was held at on August 24, 2023, at

4 P.M. (KST) at the First Hearing Room of the KCAB. The Claimant appeared through its Counsel, but the Respondent failed to appear despite having been served with all the briefs and related documentary evidence submitted by the Claimant and having been given advance notice of the hearing date through the Arbitral Tribunal's Procedural Order 1.

1.19    The Claimant's Counsel submitted its Opening Statement dated August 23, 2024, to the Arbitral Tribunal at the above hearing and, in accordance with said submission, gave a presentation on the Claimant's reasons for, and purposes of, its application. The Arbitral Tribunal requested that the Claimant's Counsel consider changing the gist of the claim for damages and to submit evidence of some of the facts supporting the reasons for the claim, and to submit Supplemental Brief and relevant evidence on said confirmations and review by September 6, 2024.

1.20    On August 27, 2024, the Arbitral Tribunal sent the record of the above hearing to each party by email, and the Respondent was sent a copy of the record and the Opening Statement of the Claimant's Counsel by DHL. A copy of the above hearing record and Opening Statement was delivered to Respondent by DHL on August 28, 2024, at the Respondent's Requested Delivery Address.

1.21    On September 6, 2024, the Claimant's Counsel submitted to the Arbitral Tribunal the Supplemental Brief and related evidence as requested by the Arbitral Tribunal at the hearing. The Claimant's Counsel sent the Supplemental Brief and related evidence to the Respondent by email on September 6, 2024, and sent the same documents to the Respondent by DHL on September 9, 2024, which were then delivered to the Respondent at the Respondent's Requested Delivery Address by DHL on September 10, 2024.

1.22    Pursuant to Procedural Order 1, the Claimant's Counsel submitted to the Arbitral Tribunal a statement of the costs associated with the arbitration on September 13, 2024. The Claimant's Counsel sent the above statement of costs to the Respondent by email on September 13, 2024, and sent the same document to the Respondent by DHL on September 19, 2024, and this document was delivered to the Respondent by DHL on September 23, 2024, at the Respondent's Requested Delivery Address.

1.23    On October 2, 2024, pursuant to Article 31 (1) of the International Arbitration Rules, the Arbitral Tribunal notified the Secretariat of the KCAB and the parties by email that the hearings of the arbitration proceedings in this case had concluded. In addition, the

above notice of the closing of hearings was delivered by DHL on October 29, 2024 to the Respondent at the Respondent's Requested Delivery Address.

1.24    In accordance with Article 38 (2) of the International Arbitration Rules, the Secretariat of the KCAB notified the parties by email twice on November 11, 2024, and December 13, 2024, of the extension of the time limit for the Present Award. This notice was also sent to the Respondent by DHL and delivered to the Respondent by DHL twice on both November 13, 2024, and December 16, 2024, at the Respondent's Requested Delivery Address. The deadline for the final award in accordance with the above notice was set as December 30, 2024.

## 2.    Basic Facts

The following facts can be acknowledged based on the entries of the Present Arbitration Application, the Preparatory Briefs, and the evidentiary materials (Exhibits Nos. C-1 through C-32) submitted by the Claimant, the Claimant's statements made at the hearing held on August 24, 2024, and the overall gist of the hearings.

2.1    The Claimant is a corporation established under the laws of Korea, and operates film screenings and movie theaters in Korea, purchases, exports, and imports domestic and foreign films and other videos, constructs and operates domestic theaters, operates various amusement facilities, restaurants, stores, etc., attached to movie theaters, and leases real estate.

2.2    The Respondent is a corporation organized under the laws of the State of California, USA, and is a holding company engaged in the business of investing in the securities of other companies.

2.3    On April 15, 2022, the Claimant and the Respondent entered into a share subscription agreement (hereinafter the "Subscription Agreement") whereby the Claimant would issue 24,952,447 common shares (hereinafter the "New Shares") to the Respondent at the issue price of KRW 5,277 per share and a total issue price of KRW 131,674,062,819, and the Respondent agreed to subscribe to said shares.

2.4    Concurrently with the execution of the Subscription Agreement between the Claimant and the Respondent, Orion Holdings Corp. (hereinafter "Orion Holdings"), the largest shareholder of the Claimant, and the Respondent entered into an Share Purchase

Agreement(hereinafter the "Share Purchase Agreement") whereby the Respondent agreed to purchase 1,313,287 shares of common stock (hereinafter the "Old Shares") from among the Claimant's issued shares held by Orion Holding at KRW 5,700 per share, for a total price of KRW 7,485,735,900.

2.5     According to Articles 3.1 and 3.2 of the Subscription Agreement, subject to the satisfaction of all conditions precedent as set forth in Article 7 of the Subscription Agreement or the exemption of such satisfaction by the authorized party, the closing of the share subscription transaction pursuant to the Subscription Agreement shall take place on June 30, 2022, or on a date otherwise agreed upon by the parties in the event that the issuance of the New Shares is delayed due to objective circumstances unrelated to the parties such as government approvals, etc., and the Respondent agreed to deposit the subscription price for the New Shares into the bank account designated by the Claimant in immediately withdrawable Korean Won funds on the closing date.

2.6     Much like in the Subscription Agreement, Articles 3.1 and 3.2 of the Share Purchase Agreement also provided that, subject to the satisfaction of all of the conditions precedent set forth in Article 7 of the Share Purchase Agreement or the exemption of such satisfaction by the authorized party, the closing of the share purchase transaction under the Share Purchase Agreement shall take place on June 30, 2022, or on the date otherwise agreed by the parties in the event that the issuance of the New Shares under the Subscription Agreement is delayed due to objective circumstances unrelated to the parties such as government approvals, etc., and the Respondent was to deposit the purchase price for the Old Shares into the bank account designated by Orion Holdings in immediately withdrawable Korean Won funds on the closing date.

2.7     Article 7.1 of the Subscription Agreement sets forth the conditions precedent to the Respondent's obligation to close the issuance and subscription of the New Shares, and Article 7.2 of the Subscription Agreement sets forth the conditions precedent to the Claimant's obligations regarding the same, and the conditions precedent set forth in Articles 7.1 and 7.2 both include (1) the receipt of all governmental approvals necessary for the performance of the above transaction (Articles 7.1 (4) and 7.2 (3)), and (2) the sale and purchase of shares under the Share Purchase Agreement to be closed simultaneously with the closing of the issuance and subscription of the New Shares (Articles 7.1 (6) and 7.2 (4)), and (3) the articles of incorporation will be amended by an extraordinary shareholders' meeting of the Claimant to increase the

number of the Claimant's directors to seven, and two persons nominated by the Respondent will be appointed as directors of the Claimant (including the appointment as a closing condition) (Articles 7.1 (7) and 7.2 (5)).

2.8 Article 11 of the Subscription Agreement stipulates multiple grounds for contract cancellation, and Article 12 stipulates that if the Subscription Agreement is canceled pursuant to Article 11, the responsible party shall pay 5% of the total subscription price to the non-responsible party as a penalty.

2.9 In order to perform the Subscription Agreement, on April 15, 2022, the Claimant's Board of Directors resolved to conduct a paid-in capital increase through a third-party allotment to the Respondent and to convene an extraordinary shareholders' meeting on May 31, 2022, and the Claimant disclosed the above resolution on the same day through the Korea Exchange. The agenda of the above extraordinary shareholders' meeting was (1) the amendment of the Articles of Incorporation to add "content planning, production, distribution, brokerage, marketing, and advertising agency businesses related to blockchain technology-based cryptographic assets (including NFTs)" and "planning and production related to virtual reality worlds (Metaverse)" to the company's business purposes, to expand the allocation limit for new shares to persons other than shareholders from 30/100 to 50/100 of the total number of issued shares by a resolution of the board of directors, and to increase the number of directors from between 3 to 6 to between 3 to 7, (2) the appointment of non-executive director Bon Woong Koo and outside director Kwang-young Kim as nominated by the Respondent as candidates, and (3) the appointment of Kwang-young Kim as a member of the Audit Committee. Afterwards, the Claimant publicly announced the convocation of the extraordinary shareholders' meeting on May 16, 2022, and at the extraordinary shareholders' meeting on May 31, 2022, a resolution was made to approve all of the above agenda items.[1]

2.10 A few days before June 30, 2022, the closing date set forth in the Subscription Agreement, the Respondent made a request with the Claimant to change the closing date of the Subscription Agreement to August 31, 2022, as the approval of the business

---

[1]At the extraordinary shareholders' meeting on May 31, 2022, a resolution was made to appoint (1) Bon-woong Koo as a non-executive director and (2) Kwang-young Kim as an outside director and a member of the audit committee as nominated by the Respondent as candidates, but these appointment resolutions were conditional resolutions that took effect only when the Respondent's payment for the New Shares subscription was completed in accordance with the April 15, 2022, resolution of the Claimant's Board of Directors to issue the New Shares.

consolidation report to the Fair Trade Commission, which is required for the Respondent to acquire the shares issued by the Claimant in accordance with Article 11 of the Monopoly Regulation and Fair Trade Act of Korea, was being delayed, making it difficult to pay the subscription price on the closing date of June 30, 2022. On June 28, 2022, as requested by the Respondent, the Claimant agreed[2] to change the closing date of the Subscription Agreement, or in other words, the payment date for the subscription price, to August 31, 2022, and on June 29, 2022, a correction report was filed with the Korea Exchange regarding the change in payment date for the New Shares (changed from June 30, 2022, to August 31, 2020) and the corresponding change in the scheduled listing date for the new shares (changed from July 20, 2022 to September 30, 2022).

2.11 The Respondent's business consolidation report was approved by the Fair Trade Commission on August 29, 2022. However, in consideration of the upcoming Chuseok holiday on August 30, 2022, the Respondent made another request with the Claimant to once again change the closing date for the Subscription Agreement from August 31, 2022 to September 30, 2022. At the same time, the Respondent requested that the issue price of the New Shares or the sale price of the Old Shares be adjusted because the share prices fell by about 20% compared to the prices at time the Subscription Agreement and the Share Purchase Agreement were executed. The Claimant agreed to accept the above request to change the closing date, and on August 30, 2022, entered into an "Agreement to Amend the Subscription Agreement" with the Respondent, thereby changing the grounds for termination under Article 11.3 of the Subscription Agreement from "if the Transaction is not closed by August 31, 2022" to "if the Transaction is not closed by September 30, 2022,"[3] and on the same day, filed a correction report with the Korea Exchange regarding the change in the delivery date for the New Shares (changed from August 31, 2022 to September 30, 2022) and the change in the expected listing date for the New Shares (changed from September 30, 2022 to October 31, 2022). However, in response to the Respondent's request to adjust

---

[2] Simultaneously with the change in the closing date of the Subscription Agreement, the closing date for the Share Purchase Agreement was also changed to August 31, 2022.

[3] Regarding the Share Purchase Agreement, Orion Holdings and the Respondent entered into the "Agreement on the Amendment of the Share Purchase Agreement and Shareholders Agreement" on August 30, 2022, changing the reason for the termination of the agreement under Article 12.1 (3) of the Share Purchase Agreement from "if the Transaction is not closed by August 31, 2022" to "if the Transaction does not close by September 30, 2022".

the issue price of the New Shares or the purchase price of the Old Shares, the Claimant replied on September 5, 2022, to the effect that it would be reasonable to implement the existing terms and conditions of the Subscription Agreement and the Share Purchase Agreement without any price adjustments.

2.12   In its reply to the Claimant on September 14, 2022, the Respondent once again requested an adjustment of the issue price for the New Shares or the sale price of the Old Shares, and at the same time, in relation to the Subscription Agreement and the Share Purchase Agreement, the Respondent argued that, from the time of its review, the Respondent asked the management and major shareholders of the Claimant in various ways about the management strategy, future business direction, and related strategies of the Claimant and communicated the Respondent's opinions, but did not receive clear answers, and requested that the Claimant present specific solutions or equivalent alternatives before the closing of the transaction under the Subjection Agreement and the Share Purchase Agreement with respect to the responses to rapid changes in the Korean and global markets, methods and specific strategies for collaborating with the Respondent to achieve success in the US market and emerging markets, measures to cope with the failure of the film business during the pandemic, improved strategies and measures to prevent recurrences, current market conditions, stock prices, production investment methods, and improvements regarding unnecessary personnel and the composition of executives that incur fixed costs.

2.13   On September 23, 2022, the Respondent contacted the Claimant again and requested that the existing sales price be maintained for the Share Purchase Agreement, but that the Respondent instead be allowed to nominate 3 out of 7 directors of the Claimant in consideration of the management premium that was factored into the price, and also requested that the subscription price for the New Shares under the Subscription Agreement be changed to KRW 4,485 per share, which was the lowest price in the past 3 months, in consideration of the market conditions at the time and the prospect of a long-term decline in price. The Respondent also confirmed to the Claimant that there would be no unilateral non-performance of the contract by the Respondent, but as a relevant covenant, the penalty would be maintained at a level of around KRW 6 billion, and that it would be paid in good faith in the event of a contract cancellation or termination in the future.

2.14   The Claimant rejected the above request of the Respondent on the grounds that it was

not appropriate to change any terms or conditions of the contract, such as the new share subscription price that had already been announced at the time, as it was close to the date for the performance of the contract that was September 27, 2022, and that the two directors that the Respondent could nominate under the existing contract would be sufficient for the Claimant to pursue new businesses such as those related to NFTs and virtual reality worlds (Metaverse), and urged the Respondent to perform the Subscription Agreement and the Share Purchase Agreement in accordance with the terms and conditions of the existing contracts.

2.15    Thereafter, the Respondent again made a request with the Claimant to discount the subscription price of the New Shares, but on both September 29 and September 30, 2022, the Claimant repeatedly requested that the entire subscription price be paid to the bank account designated by the Claimant by September 30, 2022, the closing date of the Subscription Agreement, while clarifying that it could not accept the Respondent's requests.

2.16    However, on September 30, 2022, the closing date for the Subscription Agreement and the Share Purchase Agreement, the Respondent did not pay the Claimant the subscription price for the New Shares, nor did it pay Orion Holdings the purchase price for Old Shares. The Respondent did not contact the Claimant or Orion Holdings after the passing of the closing date.

2.17    Accordingly, on October 4, 2022, the Claimant cancelled the paid-in capital increase via allotment of the New Shares to the Respondent by a resolution of the Board of Directors, and on the same day, (1) notified the Respondent of the cancellation of the Subscription Agreement pursuant to Article 11.3 of the Subscription Agreement on the grounds that the transaction was not closed by September 30, 2022, due to reasons attributable to the Respondent, and (2) requested that the Respondent pay an amount equivalent to 5% of the New Share subscription price as a penalty pursuant to Article 12 of the Subscription Agreement.

2.18    The Claimant subsequently made a request with the Respondent to pay the above penalty, but the Respondent has yet to pay the penalty as requested by the Claimant as of the present.

2.19    On March 31, 2022, the Claimant entered into a legal advisory agreement with KL Partners, a law firm, to engage them for legal advisory services such as reviewing the transaction structure and schedule, responding to the Respondent's due diligence

efforts, reviewing the relevant contracts such as the Subscription Agreement, etc., consulting on negotiations and execution, consulting on the closing, and consulting on matters related to the Claimant's disclosures in connection with the transaction to attract investment from the Respondent, and around November 2022, paid a total of KRW 70,000,000 (excluding VAT) to KL Partners as advisory fees for the above legal advisory services.

## 3.    Arbitration Agreement and Governing Law

3.1    Article 13.6, which is the Dispute Resolution Clause of the Subscription Agreement, provided that all disputes arising in connection with the Subscription Agreement shall be resolved by arbitration at the Singapore International Arbitration Centre in accordance with the Arbitration Rules of the Singapore International Arbitration Centre; however, on December 23, 2022, the Claimant and the Respondent entered into an "Agreement to Amend the Subscription Agreement," whereby Article 13.6 above was changed to "All disputes arising in relation to this Agreement shall be resolved by arbitration at the Korea Commercial KCAB ("KCAB") in accordance with the KCAB International Arbitration Rules. The number of arbitrators shall be one (1), and the seat of arbitration shall be Seoul, Korea. The arbitration proceedings shall be conducted in the Korean language."

3.2    As it is clear from Section 2 (Basic Facts) above that the dispute that is the subject of the Present Arbitration Application by the Claimant arose in connection with the performance of the Subscription Agreement, so there is a valid arbitration agreement for this dispute based on the arbitration clause of Article 13.6 of the Subscription Agreement as amended above, and as such, the KCAB has exclusive jurisdiction as Seoul, South Korea is the seat of arbitration.

3.3    Article 13.5 of the Subscription Agreement states, "The applicable law of this Agreement shall be the laws of the Republic of Korea," so the applicable law for the Present Arbitration is the law of the Republic of Korea.

## 4.    Claimant's Arguments

Based on the facts in Section 2 above, the Claimant argues as follows.

4.1     The Respondent refused to pay the subscription price for the New Shares on September 30, 2022, which was the date that was changed by the agreement of the parties, despite the fulfillment of all the conditions precedent under Article 7.1 of the Subscription Agreement, and the Claimant subsequently cancelled the Subscription Agreement pursuant to Article 11.3 of the Subscription Agreement on the grounds that the transaction was not closed by September 30, 2022. Therefore the Respondent, which is the responsible party for the cancellation of the contract, shall pay a penalty of KRW 6,583,703,141, which is 5% of the total subscription price, to the Claimant, which is the non-responsible party, pursuant to Article 12 of the Subscription Agreement, and shall also pay interest for delays calculated at the rate of 6% per annum as prescribed by the Commercial Act from October 4, 2022, which is the date the Claimant requested the payment of the penalty from the Respondent, to the date the Respondent makes full payment.

4.2     The penalty clause of Article 12 of the Subscription Agreement was clearly understood by the parties as an agreement on penalties and included in the Subscription Agreement, and the existence and content of this expression of intent must be recognized as stated in the wording in light of the fact that: the Claimant and the Respondent appointed their respective legal counsel for the execution of the Subscription Agreement, and after several meetings attended by the parties and their legal counsel, negotiated and coordinated and finalized the wording of the Subscription Agreement, including the penalty clause in Article 12; that the above penalty clause was originally included in the Subscription Agreement because the Claimant requested that the Respondent pay a down payment to ensure the performance of the agreement, but the Respondent refused to do so and instead proposed a penalty clause; the fact that in September 2022, while the Respondent requested a discount in the subscription price from the Claimant, the Respondent confirmed to the Claimant and Orion Holdings that "the penalty will be maintained at around KRW 6 billion" and that it will be paid in good faith in the event of a subsequent cancellation or termination of the agreement in order to confirm the performance of the Subscription Agreement and the Share Purchase Agreement,[4]

---

[4] If the subscription price for the New Shares is discounted to KRW 4,485 per share as requested by the Respondent, the total amount of the penalty for a breach of contract, which is 5% of the subscription price for the New Shares and 5% of the purchase price for the Old Shares, is reduced to KRW 5,969,873,034. The "penalty of about KRW 6 billion" as confirmed by the Respondent to be maintained is interpreted as meaning the total amount of penalties that the Respondent must pay if both contracts are terminated due to reasons attributable to the

and; the Subscription Agreement does not include any provision to the effect that the payment of the above penalty is the Claimant's only remedy in the event of the cancellation of the agreement due to the Respondent's failure to perform its obligations, or that the Claimant cannot exercise any other legal rights other than the above.

4.3     The amount agreed upon as a penalty cannot be reduced by applying Article 398 (2) of the Civil Act regarding liquidated damages by analogy. However, this can be invalidated in extremely exceptional cases where part or all of the penalty agreement is contrary to public order and good morals. The Subscription Agreement was a contract that was entered into by the parties in equal positions, and the Respondent's violation of the Subscription Agreement constitutes a simple termination of the contract by a change of mind. The penalty stipulated in Article 12 of the Subscription Agreement is the amount equivalent to 5% of the subscription price for the New Shares, and it is difficult to say that this amount is excessive. Therefore, there is no room for the penalty agreement in this case to be invalidated due to it going against public order and good customs.

4.4     Even if the penalty agreement under Article 12 of the Subscription Agreement can be construed as liquidated damages, it is difficult to deem that the Respondent, an investment company, is in an economically disadvantaged position compared to the Claimant, and the amount of liquidated damages is only 5% of the subscription price for the New Shares, so the ratio of the expected amount of liquidated damages to the amount of the liability cannot be deemed to be unreasonably excessive. Therefore, this payment of the expected amount of liquidated damages is not a case where unfair pressure is exerted on the Respondent as the obligor, making it unfair. Therefore, a reduction to the liquidated damages under Article 398 (2) of the Civil Act should not be applied.

4.5     Apart from the above penalty, the Claimant may claim damages from the Respondent because the Subscription Agreement was cancelled due to the Respondent's failure to perform its contractual obligations, and in this case, in principle, the Claimant may seek compensation for the gains that the Claimant could have obtained from the performance of the Subscription Agreement, i.e., the performance interest, but in lieu thereof, they may also seek compensation for the costs incurred by the Claimant in

---

Respondent.

believing that the Subscription Agreement would be performed, i.e., compensation for the reliance interest.

4.6    As seen in Section 2.19 above, during the process of executing the Subscription Agreement with the Respondent, the Claimant executed a legal advisory agreement with KL Partners, a law firm, and paid a total of KRW 70,000,000 (VAT excluded) to KL Partners as an advisory fee for said legal advisory services, which was an expense incurred by the Claimant in reliance of the performance of the Subscription Agreement and so constitutes a reliance interest, and as a reliance interest, it is an expense that is normally incurred for the execution and performance of such an agreement and constitutes an ordinary loss, so the Claimant may seek compensation from the Respondent regardless of whether the Respondent knew or could have known of it. Even if the above legal advisory fee is a loss due to special circumstances, the Respondent not only knew that the Claimant was consulting with a legal counsel for the execution of the Subscription Agreement, but also was able to fully understand that the Claimant, as an investment company, needed the advice of a legal counsel in executing such a contract, so compensation can be sought for such a loss. Therefore, the Respondent shall pay to the Claimant the legal advisory fee of KRW 70,000,000 that the Claimant paid with regard to the execution of the Subscription Agreement, and delay interest calculated at the rate of 6% per annum as prescribed by the Commercial Act starting from September 30, 2022, when the Respondent refused to perform the Subscription Agreement, to the date of payment of the above amount.

## 5.   Respondent's Arguments

5.1    As seen in Section 1 (Procedural History of the Present Arbitration) above, the Respondent was served with the Present Arbitration Application, the Preparatory Brief, and all of the related documents that were submitted by the Claimant, and through the Arbitral Tribunal's Procedural Order 1, the Respondent was given proper advance notice of the deadlines for submitting an answer, preparatory briefs, the relevant statements, and if necessary, witness statements, in addition to the hearing dates; however, the Respondent did not submit any such answer, preparatory briefs, documents, or witness statements to the Arbitral Tribunal by any of the relevant deadlines, and did not appear at any of the hearings. As such, the Respondent did not

make any arguments in the present arbitration proceedings.

5.2     As such, the Arbitral Tribunal continued to conduct arbitration proceedings with respect to the Claimant's claims against the Respondent in accordance with Article 33 (Default) of the International Arbitration Rules.[5] The Arbitral Tribunal will decide the Claimant's claims against the Respondent based on the evidence presented in this case, even if there is no argument or defense from the Respondent.

## 6.     The Arbitral Tribunal's Analysis on Claimant's Claims



## A.     Analysis on the Claim for Payment of Penalty

6.1     The Claimant argues that, in accordance with Article 12 of the Subscription Agreement that states, "If this Agreement is cancelled pursuant to Article 11, the responsible party shall pay 5% of the total subscription price as a penalty to the non-responsible party," the Respondent, which is the responsible party for the cancellation of the above contract, should pay a penalty of KRW 6,583,703,141, which is 5% of the total share subscription price, to the Claimant, which is the non-responsible party, as the Respondent refused to pay the subscription price for the New Shares on the agreed upon closing date for subscription transaction and the issuance of the New Shares, resulting in the transaction not being closed by September 30, 2022.

6.2     First, since it is clear that the issuance of the New Shares and the closing of the subscription transaction under the Subscription Agreement was not completed by September 30, 2022, the cancellation of the Subscription Agreement by the Claimant via written notice to the Respondent pursuant to Article 11.3 of the Subscription Agreement on October 4, 2022, is recognized as being lawful.

6.3     Next, we look at who is responsible for the cancellation of the above Subscription Agreement. Prior to the closing under the Subscription Agreement, the Respondent requested that the subscription price for the New Share be adjusted on the grounds that the share price of the shares issued by the Claimant had fallen significantly compared

---

[5] Article 33 of the International Arbitration Rules: Default

① If the respondent fails to provide sufficient justification and fails to submit a response within the period specified by the Arbitral Tribunal, the arbitral tribunal shall order the proceedings to continue.

② The arbitral tribunal shall have the power to conduct a hearing if any of the parties fail to appear without justifiable cause even after having been duly requested to appear.

③ If a party fails to submit written evidence within the prescribed period without a justifiable reason, the Arbitral Tribunal may make a determination on the basis of the submitted evidence.

to share price the time of the execution of the Subscription Agreement, that the Respondent specifically asked the Claimant to present the management strategy of the Claimant and measures to respond to or improve certain management-related issues before the closing, and that the Respondent's right to nominate the Claimant's directors be increased from two to three, but all of these requests were to change the existing terms and conditions of the Subscription Agreement or to request that the Claimant perform obligations not expressly stipulated in the Subscription Agreement as a condition precedent to the closing, so the Claimant had no obligation to accept or perform such requests, and therefore, the Claimant's refusal to accept or perform these requests cannot be a justifiable reason for the Respondent's failure to perform its obligation to pay the subscription price on the closing date in accordance with the existing terms and conditions of the Subscription Agreement.

6.4     Meanwhile, as of September 30, 2022, which was the closing date for the Subscription Agreement, it appears that all of the conditions precedent to the Respondent's obligation to close the transaction as set forth in Article 7.1 of the Subscription Agreement were satisfied. Specifically, (1) the Claimant adopted the resolution of the Board of Directors regarding the paid-in capital increase through the method of third-party allotment on April 15, 2022, for the issuance of the New Shares to the Respondent, disclosed the resolution of the paid-in increase through the Korea Exchange, and filed correction reports to the Korea Exchange whenever the payment date was changed (Article 7.1 (2) and (3)), (2) the Respondent submitted to the Fair Trade Commission the business consolidation report that was required to acquire the New Shares and the Old Shares, and received approval from the Fair Trade Commission on August 29, 2022 (Article 7.1 (4)), (3) Orion Holdings was in a state where it could close the transaction for the Old Shares under the Share Purchase Agreement at the same time as the closing under the Subscription Agreement (Article 7.1 (6)), (4) the Claimant approved the amendment of the Articles of Incorporation to increase the number of directors from between three to seven at the extraordinary shareholders' meeting that was held on May 31, 2022, and appointed Bon Woong Koo and Kwang-young Kim, who were nominated by the Respondent as director candidates, as directors of the Claimant conditioned on the payment of the New Share subscription price by the Respondent (Article 7.1 (7)), (5) all of the amendments to the Articles of Incorporation that were approved at the above extraordinary shareholders' meeting of the Claimant

were approved with the prior consent of the Respondent,[6] and the resolution to appoint Bon Woong Koo, who was nominated by the Respondent as a director candidate, as a non-executive director and Kwang-young Kim as an outside director and a member of the Audit Committee at the same extraordinary shareholders' meeting was naturally done after prior consultation with the Respondent, and the Claimant did not make any other amendments to its Articles of Incorporation without the consent of the Respondent, nor adopt a resolution at a shareholders' meeting without consulting the Respondent, before the closing date for the Subscription Agreement (Article 7.1 (8)). On September 30, 2022, which was the closing date for the Subscription Agreement, all other conditions precedent to the closing as set forth in Article 7.1 of the Subscription Agreement appear to have been satisfied,[7] and there is no evidence that any of these conditions precedent were not satisfied.

6.5    If so, the Respondent was obligated to pay the Claimant the entire subscription price for the New Shares on September 30, 2022, which was the closing date, in accordance with the existing terms and conditions of the Subscription Agreement, and the Claimant canceled the Subscription Agreement because the Respondent unilaterally failed to fulfill this payment obligation, so the Respondent is the party who is entirely responsible for the cancellation of the Subscription Agreement, and the Claimant is the party who was not at fault. Therefore, according to Article 12 of the Subscription Agreement, the Respondent is obligated to pay the Claimant a penalty amounting to 5% of the total subscription price.

6.6    Relatedly, we will examine whether the legal nature of the penalty clause in Article 12 of the Subscription Agreement should be viewed as a penalty agreement according to

---

[6] On April 14, 2022, the Claimant provided the Respondent with an email of the proposed amendment to the Articles of Incorporation to be resolved at the extraordinary general meeting of shareholders to be held on May 31, 2022, and the Respondent sent an email reply to the Claimant on April 15, 2022, confirming that there was no disagreement with the proposed amendment.

[7] The other conditions precedent to the closing set forth in Article 7.1 of the Subscription Agreement are as follows: (i) "The representations and warranties in Article 4 of this Agreement shall be true and correct" (provided, however, that any misunderstanding of the facts due to minor negligence shall be exempted); (ii) "The covenants and obligations, including the matters to be observed and complied with, required to be observed or performed by the Issuing Company pursuant to this Agreement on or before the Closing Date have been performed and observed, and there is no violation of any other matters of this Agreement"; (iii) "There is no enactment or amendment of any law, litigation, etc., that restricts or prohibits the performance of this Agreement, and no provisional seizure, injunction, seizure, etc., that interferes with or prevents the performance of the Agreement has been issued by a court or other government agency on or before the closing date"; and (ix) "There shall be no material adverse changes to the Issuing Company and nothing that may cause such" (except for external factors not attributable to the Issuing Company).

the text, or as liquidated damages despite the text. This is a matter regarding interpretation of intent that must be determined by comprehensively considering the contents of the relevant contract, the circumstances leading up to the execution of the contract, the circumstances under which the contracting parties agreed on a penalty, the main purpose of the penalty agreement, the nature of the obligation to guarantee performance through the penalty, and whether a separate claim for damages can be made in addition to the penalty in the event of a default. In this case, the penalty clause under Article 12 of the Subscription Agreement appears to be clearly understood and intended by the parties as an agreement on a penalty given that: (a) during the negotiations regarding the Subscription Agreement, the Subscription Agreement included a penalty clause that explicitly used the term "penalty" after a review by the legal counsel appointed by the Claimant and the Respondent; (b) the above penalty clause was first proposed by the Respondent as a means to secure the performance of the obligation to pay the subscription price instead of paying a down payment, and so was included in the Subscription Agreement; (c) the Respondent also requested a discount on the subscription price in September 2022 and confirmed that the penalty of approximately KRW 6 billion would be maintained in accordance with the existing penalty clause in order to confirm the performance of the Respondent's obligations under the Subscription Agreement and the Share Purchase Agreement;[8] and (d) the Subscription Agreement did not include a provision that restricts any claims for damages by the Claimant in addition to the payment of the above penalty in the event that the agreement is terminated due to the failure of the Respondent to perform his/her obligations. Therefore, it is reasonable to view this penalty clause as having the legal nature of a penalty agreement as explicitly stated.

6.7   A penalty agreement is a sanction for the breach of an obligation irrespective of damages that the violating party voluntarily agreed to pay the other party, so the intent of the parties to the contract must be respected as much as possible in accordance with the principle of private autonomy; therefore, the penalty agreed upon by the parties cannot be reduced by applying Article 398 (2) of the Civil Act regarding liquidated

---

[8] Although the Respondent stated in its email correspondence with the Claimant that it would maintain the "penalty" of around KRW 6 billion in order to covenant the performance of the Subscription Agreement and the Share Purchase Agreement, the term "penalty" as used herein should be deemed to refer to the "penalty for breach of contract" as set forth in Article 12 of the Subscription Agreement and Article 12.2 of the Share Purchase Agreement.

damages by analogy (see, e.g., Supreme Court Decision 2018Da248855, 248862 dated July 21, 2022 (*en banc*); Supreme Court Decision 2015Da239324 dated January 28, 2016; etc.). When determining whether a specific penalty agreement is contrary to public order and good morals, a careful judgment should be made in consideration of "the status of the parties, such as whether one party concluded the agreement using a monopoly or superior position, the background and details regarding the execution of the agreement, the motives and background leading up to the execution of the penalty agreement, the process by which the agreement was breached, etc.", and such agreements should not be prematurely rendered invalid simply because the amount of the penalty is large (see, e.g., Supreme Court Decision 2015Da239324 dated January 28, 2016; Supreme Court Decision 2013Da63257 dated December 26, 2013; etc.).

6.8   In this case, (1) the Subscription Agreement was executed by the parties on an equal footing with the advice of their respective legal counsel; (2) it does not appear that the Claimant forced the Respondent to enter into a penalty agreement by taking advantage of an exclusive or superior position and rather, as seen above, the penalty clause was first proposed by the Respondent as an alternative to avoid the payment of a down payment and so was included in the Subscription Agreement; (3) the penalty clause of the Subscription Agreement not only stipulates a penalty against the Respondent, but also stipulates a penalty against the Claimant on the same terms and conditions; (4) the Subscription Agreement was terminated by the Respondent's refusal to perform the obligation to pay the subscription price through a simple change of mind after the execution of the Subscription Agreement, resulting in the Respondent becoming obligated to pay the penalty to the Claimant; and (5) the penalty amount is 5% of the subscription price for which the Respondent failed to perform the obligation, and this amount does not appear to be excessive compared to the Claimant's interest in the obligation to pay the subscription price. As such, it cannot be said that all or part of the penalty clause of Article 12 of the Subscription Agreement is contrary to public order and good morals, and therefore, it would be reasonable to acknowledge its validity as agreed upon by the parties.

6.9   Therefore, in accordance with the penalty clause of Article 12 of the Subscription Agreement, the Respondent is obligated to pay the Claimant KRW 6,583,703,141, which is 5% of the total subscription price of KRW 131,674,062,819 for the New Shares as a penalty, and to pay delay interest calculated at the rate of 6% per annum as

prescribed by the Commercial Act starting from October 5, 2022, the day after the date when the Subscription Agreement was terminated, to the date when the Respondent makes full payment. The Claimant has been seeking payment of the above delay interest from the Respondent since October 4, 2022, the date on which the Claimant requested payment of the penalty for breach of contract, but it is reasonable to assume that the obligation to pay the penalty for a breach is due on the date when the Subscription Agreement was cancelled pursuant to Article 11 as stipulated in Article 12 of the Subscription Agreement, so the Respondent should be deemed to be liable for a delay in payment only when the date has passed. Therefore, with respect to the above penalty payment obligation, the delay interest arising from a delay in the performance of the payment obligation shall accrue from the day after October 4, 2022, which is the date on which the Claimant lawfully cancelled the Subscription Agreement.

## B.   **Analysis on Claim for Damages**

6.10   A penalty agreement is an agreement to impose sanctions for a breach of obligation, regardless of damages, that is meant to secure the performance of the contractual obligations, so independent of the penalty, the counterparty of the breaching party may also claim compensation from the breaching party for the damages that were actually incurred due to the breach of obligation.

6.11   In general, when a contract is terminated due to a contractual default and damages are claimed, the principle is to seek compensation for the gains that the obligee would have obtained from the performance of the contract, i.e., the performance interest, but in lieu of this, it is also possible to seek compensation for the expenses that were incurred by the obligee due to their reliance on the performance of the contract, i.e., the reliance interest. Provided, of this reliance interest, the expenses normally spent for the execution and performance of the contract are ordinary damages, for which compensation can be sought regardless of whether the defaulting party knew or could have known of them, but expenses in excess of these are damages due to special circumstances, so compensation for such can only be sought in cases where the defaulting party knows or could have known of them, and furthermore, the reliance interest cannot exceed the scope of the performance interest in light of the principle of prohibiting excessive compensation (see Supreme Court Decision 2012Da101695

dated May 14, 2015).

6.12 In this case, on March 31, 2022, the Claimant entered into a legal advisory contract with KL Partners, a law firm, and entrusted them with legal advisory services such as reviewing the transaction structure and schedule, responding to the Respondent's due diligence, reviewing related contracts such as the Subscription Agreement, consulting on negotiations and execution, consulting on closing, and consulting on matters related to the Claimant's disclosures in connection with the transaction to attract investment from the Respondent. Around November 2022, a total of KRW 70,000,000 (VAT excluded) was paid to KL Partners as advisory fees for the above legal advisory services. And as seen above, the Subscription Agreement was lawfully terminated by the Claimant as the Respondent refused to perform its obligation to pay the subscription price on the agreed upon closing date.

6.13 Therefore, the advisory fee under the above legal advisory contract is an expense incurred by the Claimant under the belief that the Subscription Agreement would be performed, which constitutes a reliance interest. Furthermore, considering the nature and scale of the new share issuance and purchase transaction in this case, the ordinary scope of legal expenses incurred by the issuing company in similar transactions, and the fact that the Respondent also received advice from a legal counsel in relation to the negotiation, execution, and closing of the Subscription Agreement, it is reasonable to view the above advisory fee as an ordinary expense incurred for the execution and performance of the Subscription Agreement, which constitutes an ordinary loss out of the reliance interest. Therefore, the Claimant may seek compensation from the Respondent regardless of whether the Respondent knew or could have known of the expenditure of such advisory fees. In addition, considering that the subscription price the Respondent was obligated to pay under the Subscription Agreement was a large amount exceeding KRW 131.6 billion in total, and that the issue price per share of the New Shares under the Subscription Agreement was KRW 5,277, while the closing price of the Claimant's issued shares that were traded on the KOSDAQ market of the Korea Exchange on September 30, 2022, the closing date of the Subscription Agreement, was only KRW 3,565 per share, which was about 32.44% lower than the above issue price,[9] it is difficult to say that the above reliance interest for which the

---

[9] The closing price of the Claimant's issued shares on the KOSDAQ market of the Korea Exchange on September 30, 2022, can be found on the Korea Exchange Information Data System (https://data.krx.co.kr).

Claimant seeks compensation exceeds the scope of the performance interest (i.e., the gains that the Claimant, as the issuing company of the New Shares, could have obtained due to the payment of the subscription price by the Respondent under the Subscription Agreement).

6.14    If so, then the Respondent is obligated to pay to the Claimant the legal advisory fee of KRW 70,000,000 that the Claimant spent for the execution of the Subscription Agreement and delay interest calculated at the rate of 6% per annum as prescribed by the Commercial Act starting from April 18, 2023, the day after the date on which a copy of the Present Arbitration Application was served to the Respondent, to the date on which it is fully paid by the Respondent. The Claimant has been seeking payment of the above delay interest since September 30, 2022, the date on which the Respondent clearly expressed its intention to refuse the performance of the obligation to pay the subscription price under the Subscription Agreement. However, the Respondent's obligation to compensate for the Claimant's damages corresponding to the above legal advisory costs is an obligation with no fixed period for performance, so the Respondent is liable for delays starting from the time when the Respondent received the Claimant's claim for performance. Therefore, since there is no evidence that the Claimant claimed compensation from the Respondent for damages related to the use of the above legal advice prior to the filing of the Present Arbitration Application, the delay interest must be seen as starting from April 18, 2023, the day after the Respondent was served with a copy of the Present Arbitration Application with respect to the Respondent's liability for damages above.

## 7.    Conclusion

7.1     As seen above, the Respondent is obligated to pay the Claimant KRW 6,653,703,141, which is the sum of the penalty of KRW 6,583,703,141 under Article 12 of the Subscription Agreement and the damages of KRW 70,000,000 suffered by the Claimant due to the Respondent's failure to perform its obligations under the Subscription Agreement, in addition to the amounts calculated at the rate of 6% per annum as set forth in the Commercial Act starting from January 5, 2022, to the date of full payment for said KRW 6,582,703,141, and from April 18, 2023, to the date of full payment for said KRW 70,000,000. Therefore, the Claimant's claims are accepted as

having grounds within the above scope of recognition, and the remaining claims are dismissed as having no grounds.

7.2   With regard to the costs of arbitration, in accordance with Articles 52 and 53 of the International Arbitration Rules and in consideration of the degree of acceptance of the Claimant's claims, the Respondent's refusal to participate in the arbitration proceedings, and the other circumstances and situations, it is reasonable for the Respondent to bear all of the costs of arbitration totaling KRW 147,266,491, which includes (1) the costs of arbitration (including the amount of the Respondent's advance payment that was made by the Claimant instead to the KCAB), including the fees for the arbitration application, management fees, arbitrators' allowances and expenses, and other expenses that were paid by the Claimant to the KCAB, which amount to KRW 80,453,437; (2) the costs of inspection of the bill register, service of documents, and other expenses incurred by the Claimant for the preparation and progression of the arbitration proceedings, which amount to KRW 439,054; and (3) the attorney's fees borne by the Claimant in connection with the arbitration proceedings, which amount to KRW 66,374,000. The Claimant also seeks interest on the arbitration costs to be borne by the Respondent; however, the Respondent's obligation to pay the above arbitration costs to the Claimant is an obligation with no fixed term that is established by service of process to the parties to this Arbitration Award, and as such, the Respondent becomes liable for any delays in performance only after receiving the Claimant's claim for payment, so the Claimant's above claim, which seeks delay interest with respect to the arbitration costs that the Respondent is now liable for, is not accepted.

7.3   For the foregoing reasons, it is hereby decided as determined above.

- Below Intentionally Left Blank -

Seat: Seoul, Republic of Korea

December 30, 2024

Sole Arbitrator: _____

Choi Kyung-joon



[Attachment 1]

## Korean Commercial Arbitration Board Arbitration No. 23113-0005
### Claimant SHOWBOX Corp. vs. Respondent Maum Studio Inc.

### Procedural Order on the Arbitration Schedule and Procedural Matters
### May 29, 2024

1.  All notices and communications in connection with this case between the Arbitral Tribunal, the Parties and the Secretariat of the Korean Commercial Arbitration Board shall be given by email unless the Arbitral Tribunal decides otherwise. Provided, however, that until the Respondent informs the Secretariat of the Korean Commercial Arbitration Board or the Arbitral Tribunal of the contact information that the Respondent designates or consents to by participating in the present arbitration proceedings, all notices and communications to the Respondent shall be made by means of international courier service (DHL, FedEx, etc.) or registered mail to the Respondent's last known address (the address provided by the Claimant to the Arbitral Tribunal) in accordance with Article 4 (2) of the International Arbitration Rules of the Korean Commercial Arbitration Board.

2.  All time limits shall expire at 5:00 P.M. (KST) on the relevant day.

3.  All email correspondence to the Arbitral Tribunal by the counsel of each Party shall also be communicated to the counsel of the other Party and the Secretariat of the Korean Commercial Arbitration Board by carbon copy (cc).

4.  The Respondent shall submit its response to the Claimant's Present Arbitration Application and related documentary evidence by June 14, 2024.

5.  Claimant may submit its Preparatory Brief, related documentary evidence, and, if necessary, witness statements by July 5, 2024, for comment and rebuttal of the Respondent's response and related documentary evidence submitted pursuant to paragraph 4 above.

6.    The Respondent may submit its Preparatory Brief and related evidentiary documents
      and, if necessary, witness statements by August 2, 2024, for comment and rebuttal on
      the preparatory brief and related documentary evidence submitted by the Claimant
      pursuant to paragraph 5 above.

7.    Each Party may submit additional documentary evidence by August 9, 2024.

8.    Each witness statement shall contain, at a minimum, the following:

      (a)  Name, date of birth, current address and photograph of witness

      (b)  Statement on the contents of the statement or, if relevant to the dispute, of the
           position and qualifications of the witness; 

      (c)  Statement on the facts to be stated by the witness and the sources from which the
           witness became aware of them;

      (d)  Statement confirming that the statements being made are true.

      (e)  Signature of witness; place and date of signature

9.    The submission of documentary evidence and witness statements by both parties shall
      be permitted only up to the time limit for such submissions as set out in paragraphs 5
      to 7 above, unless the Arbitral Tribunal grants special permission in advance. Therefore,
      all necessary methods of evidence must be submitted by the relevant submission
      deadline.

10.   Each party must apply for cross-examination of a person who prepared a witness
      statement submitted by the other party by August 9, 2024. Upon receipt of a request
      for cross-examination, the other party shall cause the witness to appear on the date of
      the hearing.

11.   After the confirmation of the witnesses subject to cross-examination under paragraph
      10 above, the Arbitral Tribunal shall determine the specific method for proceeding with
      the hearing after collecting the opinions of the parties through email, telephone
      conference, or video conference.

12.   The hearing will be held on August 23, 2024, at 2:00 P.M., in the hearing room of the
      Korea Commercial Arbitration Board.

13.   The time limit and date under Paragraphs 4, 5, 6, 7, 10, and 12 above may be changed
      by referring to the opinions of the parties, if the Arbitral Tribunal deems it necessary
      depending on the progress of the arbitration proceedings.

14.   The parties shall consult with each other to prepare all matters necessary for the hearing,

and the expenses incurred therefrom shall be borne in half until the Arbitral Tribunal makes a determination on the costs of the arbitration in its final award.

15. Each party may make an opening statement for up to 45 minutes at the hearing, and may deliver the presentation materials to be used in the opening statement to the Arbitral Tribunal and the other party on that day.

16. When the parties' opening statements are completed, the Claimant's witness examination shall be conducted, followed by the Respondent's witness examination (main examination, cross-examination, and re-main examination, in that order). The main examination shall be limited to confirming the identity of the witness and the contents of the written statements that were submitted in advance, unless the Arbitral Tribunal grants prior permission. After the cross-examination is completed, the subject of the re-examination shall be limited to the statements made in the cross-examination, and no new testimony may be requested.

17. Unless the Arbitral Tribunal decides otherwise, a witness with respect to the facts may not attend the hearing until the proceedings for the examination of the witness in question have been completed, and they may not consult with the parties or their counsel about the case or the details of the witness examination during the hearing. Provided, however, that witnesses with respect to the facts may be in attendance for the parties' opening statements during the hearing.

18. After the examination of witnesses, each party may make final arguments within the time limit of ten minutes.

19. In principle, the parties can freely allocate and use the same amount of time for their opening statements, witness examinations, and final arguments in connection with the hearing. However, the Arbitral Tribunal may, at its discretion, decide otherwise with regard to the allocation of time.

20. At the end of the hearing, the Arbitral Tribunal may, in order to refer to the opinions of the parties, require the parties to submit a final brief within two weeks after the hearing. Such documents shall be simultaneously submitted by each party at 5:00 P.M., on the relevant day in the form of an email attachment. The Arbitral Tribunal may issue specific guidelines on the contents and volume of the above final briefs.

21. Within one (1) week of the submission of the final briefs, each party shall submit to the other party a statement regarding the arbitration-related costs that are being claimed.

(End)